UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

        v.

MUSTAFAA SALEH,

    Defendant.

No. 22 CR 618

Judge Andrea R. Wood

## SENTENCING MEMORANDUM

For nearly four years Mr. Saleh worked at the Cook County Land Bank Authority (CCLBA) as a valuable employee. Mr. Saleh knew first-hand the value of strong neighborhoods and the detrimental effect vacant and abandoned buildings could have on his community. Mr. Saleh loved his job and hoped that his work led to better results for his community. During his time at the CCLBA Mr. Saleh also used unfortunate and unlawful means to obtain property which he rehabbed and then sold. And while there is no dispute that Mr. Saleh's conduct here violated the Cook County ethics rules, and in doing so he committed a crime, the offense conduct is far from typical.

To that end, Mr. Saleh completed all the work that any other developer would have performed on the six properties at issue, and fully accomplished the mission of the CCLBA by successfully rehabilitating and returning the delinquent properties back into now thriving community assets. He did this, however, while employed as an asset manager at the CCLBA- which was prohibited.

To be clear, Mr. Saleh fully recognizes his actions in this case were both wrong and criminal. By obtaining these properties through artifice he violated the trust of his employers and broke the

1

law. This is the odd case where although the means by which Mr. Saleh committed this crime were complicated- there is no monetary loss to the CCLBA. Ethical violations occurred- to be sure- but true economic harm was not wrought on the county. And while this does not clear him of wrongdoing, it is mitigating in the same way that extensive economic loss in a fraud case is aggravating.

In accepting responsibility, and to save government resources, Mr. Saleh pled guilty to an information at his first court appearance. A fair and just punishment for this offense is to brand Mr. Saleh a convicted felon, which will forever tarnish his own reputation and cause him employment impediments for a lifetime. Mr. Saleh will further lose his right to possess a firearm and to vote, two fundamental rights he holds dear which he will now lose for a lifetime based on his criminal conduct. When looking at the nature and circumstances of the offense, and considering Mr. Saleh's otherwise admirable life, a custodial sentence would be greater than necessary to achieve the goals of sentencing.

## I. Clarifications and Objections to the Presentence Investigation Report.

### A. Factual Issue at p.8, ¶18.

Mr. Saleh disagrees with the government's assertion that the fraud "depleted the CCLBA's stock of properties available to potential long-term homeowners, who are the CCLBA's preferred customers. Each property the defendant flipped and resold to enrich himself might have instead gone to someone seeking to become a homeowner . . . ."

Each of the six properties at issue that Mr. Saleh fully rehabilitated and returned to the community were never offered by the CCLBA to private homeowners because they all needed extensive rehabilitation. Moreover, three of the properties were purchased directly from the

2

developer excess inventory list. All six properties were offered to developers, all of whom would have done the same rehabilitation work that Mr. Saleh did, before returning the property to a private homeowner.

Additionally, while long-term homeowners are the CCLBA's "preferred customers" it is rarely the case where direct homebuyers buy directly from the landbank. In fact, there is almost always a middle buyer/developer who rehabs before selling to the end buyer. A simple review of the current CCLBA website indicates the CCLBA has a current inventory of 814 properties available for sale, with none of them designated for direct homeowner purchase.[1] Almost all the CCLBA inventory includes properties that require significant renovation and rehabilitation which is why developers are mainly the actual purchasers of these properties.

The tendered discovery supports this as well. Executive Director of CCLBA was interviewed by the federal government regarding his knowledge of the case generally and Mr. Saleh specifically. As to the former, in explaining the process followed by the landbank when it received a property he stated, "initially, there was an email list created based on developers that met with CCLBA employees and were approved to acquire properties. If the CCLBA received a property, an 'email blast' was sent to the individuals on this list. Developers then needed to respond to this email to indicate their interest in a given property." In the early stages of the CCLBA, the Executive Director would go to community meetings to explain to "rehabbers" what the land bank offered to obtain interest in developers. When the email blasts and meetings proved to be inefficient the CCLBA created on online portal where the developers could log-in directly. In fact, throughout the Executive Director's multi-page interview he consistently refers to the "developers" buying and then rehabbing

---

[1] *See https://public-ccllba.epropertyplus.com/landmgmtpub/app/base/propertySearch* (last accessed November 22, 2023).

the properties before selling to the actual homeowners. Additionally, an acquisition specialist (DD), in describing how the CCLBA worked, stated, "The CCLBA wanted developers to fix up their properties and sell them to home-owners."

To be clear, there is nothing wrong with this and in fact it is probably the most efficient way to deal with the CCLBA's inventory. By selling to developers with the know-how and resources to rehab its properties, then sell them at reduced costs to homeowners, the landbank is fulfilling its mission.

While this is not in any way meant to minimize Mr. Saleh's actions, the government's claim that Mr. Saleh was ousting "homeowners" does not accurately characterize Mr. Saleh's actions. These properties were bought by developers- who then sold the properties to homeowners. As described below, Mr. Saleh rehabbed the houses, sold them to individual homeowners, and the property value far exceeds what the homeowners paid for the property.

## II.    Position Paper and Commentary on Sentencing Factors

### A. Nature and Circumstances of the Offense

Mr. Saleh used fictious entities and straw buyers to purchase and rehab properties that he was barred from owning based on his job at the CCLBA. The government's stock argument that this was all for pure greed is not accurate and does not fit the facts of this case. Mr. Saleh did not steal money from the landbank, or any individual person. In looking at the nature and circumstances of the offense, there are three material facts which the defense believes should not be in dispute, all of which weigh heavily in Mr. Saleh's favor and warrant a non-custodial sentence.

1.      All six properties purchased by Mr. Saleh were successfully renovated and rehabilitated, either at or above the standard required by the CCLBA for developers, and five were

later successfully sold to private homeowners while one multi-family unit was rented. Each of the five properties are now worth significantly more than the private homeowner purchased it for, and thus the purpose of the CCLBA has been fulfilled with respect to all six transactions at issue.

2.      While Mr. Saleh was wrong not to disclose his true ownership in the six properties at issue, there is no allegation that he did shoddy work or otherwise fell below the standard of competency required by the CCLBA.

3.      While Mr. Saleh was wrong not to disclose his true ownership in Evergreen Property Services (EPS),[2] all the maintenance work contracted by the CCLBA was performed by EPS at or above the level anticipated by the parties and thus the CCLBA suffered no actual loss by awarding EPS the maintenance contract.[3]

With the above three points in mind, Mr. Saleh fully acknowledges that he violated the Cook County ethics ordinance by hiding his identity and using fictious entities to purchase the property and that his actions were criminal. Mr. Saleh should have resigned from his position at the CCLBA prior to attempting to engage in the business dealings described above. Had he done so all his actions would have been legal and likely celebrated by the CCLBA. And while the government's recitation about all the steps Mr. Saleh took to obtain these properties are correct- the fact remains that he did the work. As this Court is aware, in most fraud cases where straw buyers are involved, the "real owner" rides off into the sunset leaving the straw owner holding the bag. Not so in this case. Mr. Saleh did use straw buyers and entities to circumvent the ethics code, but still performed the work needed to be done.

---

[2] Mr. Saleh further acknowledges that had he disclosed his interest in Evergreen Property Services his company would not have been awarded the contract for that reason.
[3] *See* PSR ¶16 (acknowledging that Saleh's maintenance company performed all of the services contracted for resulting in no actual loss to the CCLBA)

Mr. Saleh would like to emphasize that he is not making a "no-harm no-foul" argument. And that he pled guilty because he fully realizes the nature of his conduct. In every case, however, the nature and circumstances of the offense are important, including the actual loss suffered by the victims.

      **i.     Mr. Saleh Successfully Rehabbed the Six Properties Involved.**

The information identifies six specific properties that Mr. Saleh purchased, rehabilitated, and sold as part of this scheme. The defense provided records and receipts to the government demonstrating that Mr. Saleh did the work that any contractor who purchased these properties would have needed to do to rehabilitate the properties. Mr. Saleh spent hundreds of thousands of dollars and hundreds of hours personally rehabilitating these properties. Mr. Saleh spent nights and weekends painting walls, fixing pipes, and installing fixtures to rehabilitate these dilapidated properties. There is no allegation in this case that Mr. Saleh attempted to cut corners in any of these renovations. Mr. Saleh provided the government with photographs of before and after appearances of these properties and his work is remarkable. The true value of Mr. Saleh's hard work is best demonstrated by the price history of these six properties and their current market valuations which are detailed below:

**Property 1**: Purchased by Mr. Saleh for approximately $67,000 in March 2016. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was later purchased by a private homeowner for approximately $89,000 and is now estimated to be worth approximately $166,000.[4]

---

[4] *See* https://www.redfin.com/IL/Oak-Lawn/10322-S-Komensky-Ave-60453/unit-C/home/13149203 (last accessed November 20, 2023).

**Property 2**: Purchased by Mr. Saleh for approximately $93,000 in October 2016. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was later purchased by a private homeowner for approximately $145,000 and is now estimated to be worth approximately $221,856.[5]

**Property 3**: Purchased by Mr. Saleh for approximately $57,000 in December 2016. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was purchased by a private homeowner for approximately $290,000 and is now estimated to be worth approximately $372,764.[6]

**Property 4**: Purchased by Mr. Saleh for approximately $146,529 in March 2019. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was purchased by a private homeowner for approximately $307,000 and is now estimated to be worth approximately $395,733.[7]

**Property 5**: Purchased by Mr. Saleh for approximately $76,560 in October 2019. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was purchased by a private homeowner for approximately $179,900 and is now estimated to be worth approximately $205,933.[8]

---

[5] *See* https://www.redfin.com/IL/Midlothian/14604-Sawyer-Ave-60445/home/12984113 (last accessed November 20, 2023).

[6] *See* https://www.redfin.com/IL/Chicago/4209-W-24th-Pl-60623/home/14146136 (last accessed November 20, 2023).

[7] *See* https://www.redfin.com/IL/Chicago/3619-S-Francisco-Ave-60632/home/14128162 (last accessed November 20, 2023).

[8] *See* https://www.redfin.com/IL/Chicago/7945-S-East-End-Ave-60617/home/147734284 (last accessed November 20, 2023).

**Property 6**: Purchased by Mr. Saleh for approximately $111,010 in June 2018. Mr. Saleh and his team performed extensive rehabilitation work on the property and the property was rented and is now estimated to be worth approximately $412,249.[9]

ii.    **Mr. Saleh's Property Service Company Performed All Contracted For Services.**

Similarly, the government has reviewed all the CCLBA and EPS records and determined that Mr. Saleh's property maintenance company, EPS, performed all the contracted work as required. Once again, had Mr. Saleh simply resigned from his position and bid for the maintenance contract he could have avoided his current predicament. Mr. Saleh spent his nights and weekends mowing lawns, raking leaves, and tending to repair at multiple CCLBA properties. He did the work he was paid for in violation of the ethics rules he promised to abide. Mr. Saleh accepts responsibility for his mistakes but notes that all parties agree the CCLBA received the fair market value of the services they contracted for and there is no allegation of any overpayment or work not performed by EPS.

**B. History and Characteristics of Mr. Saleh.**

Mustafaa Saleh is a proud father of three young children (ages 8, 5, and 2) who has always worked hard to provide for his family. Even while navigating this difficult process over the last few years, Mr. Saleh has worked hard as a truck driver to continue to provide for his family and show his children that when you make a mistake, you need to accept responsibility, make amends, and dust yourself off and continue to move forward and contribute to society.

A look at Mustafaa's background demonstrates this crime is a total aberration in an otherwise lawful and ideal life. Mustafaa has no criminal history, an impressive education, and a strong work

---

[9] *See* https://www.redfin.com/IL/Chicago/2941-E-96th-St-60617/home/13041868 (last accessed November 20, 2023).

ethic. His family has submitted letters detailing Mr. Saleh's character. (attached as Exhibit A). Mr. Saleh was born and raised in Chicago and comes from a large family of eight children. All ten family members lived in a small apartment as their father worked at Chicago Transit Authority to support the family. Mr. Saleh knew the importance of education from an early age and worked hard to get to and graduate from the University of Illinois with a degree in consumer economics and finance.

Mr. Saleh utilized his degrees to get involved in real estate and loved working at the CCLBA. Mr. Saleh is hopeful this Court sees that this misguided criminal behavior was an aberration and sentences Mr. Saleh to a term of probation which would allow him to continue to work as a truck driver and provide for his wife and three small children.

### C. The Kinds of Sentences Available and Just Punishment

For violating the ethics rules Mr. Saleh has already paid a steep price. He will forever be a convicted felon which will no doubt limit his career opportunities going forward. He has also suffered significant financial penalties as result of this offense and owes over $172,000 as part of a forfeiture judgment in this case. Moreover, Mr. Saleh has forfeited his right to vote, as well as to own a firearm, two fundamental rights that Mr. Saleh holds dear and has forever relinquished based on his poor decisions in this case.

For the crime at issue these significant punishments, along with a two-year term of probation and community service, is just punishment for the crime at issue and certainly sufficient but not greater than necessary to accomplish the goals of sentencing.

### III. CONCLUSION

There is no denying Mr. Saleh made very bad decisions in violating the ethics rules he agreed to abide by. At the same time, there is no denying the kind of person Mr. Saleh is, the exemplary

life that he has led, and the contributions he has made to his family, friends, and the community. Mr. Saleh has now appropriately suffered significant consequences for his poor choices and asks this Court to allow him to get back to work supporting his family and strengthening his community as he rebuilds his life from this tragic fall. We respectfully submit that the interests of justice, tempered by the history and characteristics of the individual, warrant a non-custodial sentence, along with a significant term of community service. Such a sentence would be sufficient but not greater than necessary to accommodate all the various sentencing considerations.

Respectfully submitted,

s/Damon M. Cheronis
Damon M. Cheronis

**Cheronis & Parente**
140 S. Dearborn Street Suite 404
Chicago, IL 60603
(312) 663-4644

Dated: November 24, 2023

### CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on November 24, 2023, I electronically filed the foregoing **Sentencing Memorandum** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Damon M. Cheronis
Damon M. Cheronis
Cheronis & Parente
140 S. Dearborn Street Suite 404
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com

11